[Cite as *State v. Napier*, 2024-Ohio-1837.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-04-019 |
| | : | O P I N I O N |
| - vs - | | 5/13/2024 |
| | : | |
| DENNY R. NAPIER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2022 CR 0230

Mark L. Tekulve, Clermont County Prosecutor, and Nick Horton, Assistant Public Defender, for appellee.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.

**BYRNE, J.**

{¶ 1} Denny R. Napier appeals from his convictions for rape, gross sexual imposition, and felonious assault in the Clermont County Court of Common Pleas. For the reasons described below, we affirm.

**I. Factual and Procedural Background**

{¶ 2}   In March 2020, a Clermont County grand jury indicted Napier on ten counts, consisting of three counts of rape (Counts 1, 4, and 7), six counts of gross sexual imposition (Counts 2, 3, 5, 6, 8, and 9), and one count of felonious assault (Count 10.)

{¶ 3}   The indictment arose following allegations made by Napier's then 11-year-old stepdaughter ("Aubrey").[1]  Aubrey alleged that during the summer of 2021, Napier, on multiple occasions, touched her sexually, including by touching her thigh, breasts, and buttocks, and by rubbing or digitally penetrating her vagina.  The felonious assault count related to Aubrey having suffered posttraumatic stress disorder ("PTSD") because of the molestation.

{¶ 4}   Counts 1, 4, and 7—all rape offenses in violation of R.C. 2907.02(A)(1)(b)—are most relevant to this appeal.  According to the bill of particulars and the amended indictment, the state charged the following conduct, which occurred from June 2021 through August 2021.[2]

Count 1

Alleged that numerous times, at a residential address in New Richmond, Ohio, Napier digitally penetrated Aubrey's vagina.

Count 4

Alleged that numerous times, at a residential address in New Richmond, Ohio, Napier digitally penetrated Aubrey's vagina.

Count 7

Alleged that numerous times, at a residential address in New

---

1. "Aubrey" is a pseudonym used here to preserve the victim's privacy and for purposes of readability.  *See In re A.P.*, 12th Dist. Warren No. CA2022-01-002, 2022-Ohio-3181, ¶ 2, fn.1; *see also* Ohio Constitution, Article I, Section 10a(A)(1) (requiring that victims in the criminal and juvenile justice systems "be treated with fairness and respect for the victim's safety, dignity and *privacy*").  (Emphasis added.)

2. During trial, the state amended the indictment so that Counts 1, 4, and 7 all included the date range of June 2021 through August 2021.  Originally, Count 1 covered the month of June 2021, Count 4 covered the month of July 2021, and Count 7 covered the month of August 2021.

Richmond, Ohio, *and specifically, one time at Eight Mile Creek,* Napier digitally penetrated Aubrey's vagina.

{¶ 5} Following the indictment, the state moved to dismiss three of the six counts of gross sexual imposition (Counts 3, 6, and 9), which motion the court granted.

{¶ 6} The matter then proceeded to trial. The state presented the following evidence relevant to deciding this appeal.[3]

## A. State's Evidence

## 1. Aubrey's Testimony

{¶ 7} Aubrey testified that she was 12 years old as of the day of trial. Napier was her stepfather and she had known him for eight years. During the time Napier was married to her mother, Aubrey lived with Napier, her mother, her brother, and her sister. They lived together at a home in New Richmond. Aubrey testified that all of the sexual abuse occurred between June 2021 and August 2021, and ended when Napier moved out of the home.

{¶ 8} Aubrey testified that at the end of July 2021, she and Napier were on the sofa in the New Richmond home. They were watching a movie. Napier put his hands on her vagina and then stuck his fingers inside her vagina. After testifying to this incident, the prosecutor asked Aubrey how often "these things happen, this touching?" Aubrey responded, "Almost every night."

{¶ 9} Aubrey also testified about an incident that happened while swimming with Napier and her brother at Eight Mile Creek. During this incident, which happened in August 2021, Napier was touching her over her swimsuit. He then put his hands under her swimsuit and touched her vagina. He used his fingers and was rubbing her vagina.

---

3. Because of the arguments raised in this appeal and how they are resolved, we confine our discussion of the evidence to that directly related to the three rape counts. Aubrey also testified to actions of Napier against her constituting gross sexual imposition, as well as his other inappropriate conduct towards her. The state presented witnesses who corroborated Aubrey's testimony in various ways, including her mother, her sister, and her grandfather. The state also presented the testimony of Aubrey's therapist, who testified as to the mental effects of the abuse.

{¶ 10} After this testimony, the prosecutor asked Aubrey, "Did he put his fingers inside of anything?" Aubrey responded, "No, not that time." The prosecutor then asked Aubrey if she knew what the lips of her vagina were. She agreed she did. The prosecutor then asked, "Was he in between those lips?" Aubrey, responded, "Yes."

### 2. Emily Harman's Testimony

{¶ 11} Emily Harman testified that she was a social worker who worked at Cincinnati Children's Hospital Medical Center's Mayerson Center. On October 29, 2021, she interviewed Aubrey at the Mayerson Center.

{¶ 12} Aubrey told Harman of multiple instances of sexual activity perpetrated against her by Napier over the course of the summer of 2021. Aubrey told Harman that Napier would rub her vagina with his hands and in some of those instances he would put his fingers inside of her vagina.

### 3. The Mayerson Center Video Recording

{¶ 13} During Harman's testimony, the state played a redacted video recording of Harman's interview with Aubrey. In it, Aubrey described multiple incidents of sexual contact and sexual conduct, all of which occurred on the sofa in the living room of the New Richmond home.

{¶ 14} Aubrey told Harman that, in addition to the incidents of sexual contact that occurred on the sofa, Napier had put his finger "up there," "five times." She said that Napier's finger would go in "the hole that I pee out of." Aubrey explained that when his finger would "go in" it would hurt.

### B. Defense Case and Verdict

{¶ 15} Napier presented no evidence in his defense. The jury returned guilty verdicts on all counts of the indictment except for Count 7 (one of the three rape counts), for which the jury found Napier not guilty.

## C. Sentencing and Appeal

{¶ 16} The court sentenced Napier to mandatory prison terms of ten years to life on both rape convictions and ran the terms consecutive to each other. The court sentenced Napier to five years on one count of gross sexual imposition and ran that term consecutive to the rape offenses. The court imposed concurrent jail terms on the remaining offenses. Napier has appealed, raising four assignments of error.

## II. Law and Analysis

## A. Sufficiency and Manifest Weight of the Evidence

{¶ 17} We review Napier's first two assignments of error collectively.

{¶ 18} Napier's first assignment of error states:

APPELLANT'S CONVICTIONS ARE BASED UPON INSUFFICIENT EVIDENCE.

{¶ 19} Napier's second assignment of error states:

THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY UPON THE JURY'S VERDICT BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 20} In his first assignment of error, Napier contends that the state produced insufficient evidence as a matter of law to convict him on Counts 1 and 4. Napier's argument focuses on Aubrey's testimony about the vaginal touching that occurred at Eight Mile Creek. Specifically, Napier argues that his conviction on Count 1 or Count 4 must have been premised on the Eight Mile Creek incident[4] and that the state did not provide sufficient evidence that sexual conduct occurred during that incident because Aubrey testified that Napier did not "put his fingers inside anything." Napier argues that Aubrey only agreed that Napier used his fingers to rub between the lips of her vagina after being led by the

---

4. Napier does not explain why he believes that either Count 1 or Count 4 related to the Eight Mile Creek incident. He argues that it is "unclear which count represented the alleged incident at Eight Mile Creek."

prosecutor. As a result, he claims that this testimony was insufficient as a matter of law to constitute sexual conduct.

{¶ 21} For the same reasons, Napier argues in his second assignment of error that there was no substantial evidence of his guilt for rape on one of either Count 1 or 4 and therefore argues that the jury lost its way in convicting him on one of those counts.

**1. Applicable Law—Sufficiency and Manifest Weight**

{¶ 22} When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 23} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶ 24} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the

weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 12th Dist. Clinton No. CA2020-06-007, 2021-Ohio-466, ¶ 15.

{¶ 25} "Although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, '[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency.'" *State v. Billingsley*, 12th Dist. Butler Nos. CA2019-05-075 and CA2019-05-076, 2020-Ohio-2673, ¶ 15, quoting *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

**2. Analysis**

{¶ 26} In Counts 1 and 4, the state convicted Napier of rape in violation of R.C. 2907.02(A)(1)(b). That statute provides:

> No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies: * * * The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶ 27} Proof of "sexual conduct" is the only element of the rape statute that Napier contends the state failed to prove. The definition of "sexual conduct," set forth at R.C. 2907.01(A), includes "the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

{¶ 28} Napier's argument is premised on the contention that his conviction under either Count 1 or Count 4 related to Aubrey's trial testimony about what occurred at Eight Mile Creek. However, the record does not support this contention.

{¶ 29} Count 7 of the indictment, according to the bill of particulars, was the only count specifically related to Napier's conduct at Eight Mile Creek. This comports with the state's closing argument, in which it summarized the evidence related to Count 7:

> Count 7, August, Eight Mile Creek. [Aubrey] testified, not only did the Defendant touch her buttocks and vagina over the bathing suit, but at this time, this wasn't just touching of the vagina, he put his fingers around the other areas inside the beginning parts of it and penetrated with his fingers. As to count 7, guilty as to rape.

{¶ 30} As described above, the jury found Napier not guilty of that count. Assumedly, the jury was not convinced beyond a reasonable doubt that Napier committed an act constituting rape in that incident. Therefore, his arguments concerning the evidence related to the Eight Mile Creek incident are irrelevant for purposes of our review of the sufficiency of the evidence supporting his convictions on Counts 1 and 4.

{¶ 31} We therefore review whether there was sufficient evidence presented to convict Napier of two counts of rape occurring at the New Richmond home. We find that there was.

{¶ 32} Aubrey testified that at the end of July 2021, she and Napier were on the sofa. They were watching a movie. He put his hands on her vagina and then he stuck his fingers inside her vagina. In a follow-up question, Aubrey testified that this "touching" occurred almost every night.

{¶ 33} Separately, in her Mayerson Center interview, Aubrey told Harman that on five occasions that summer, while in the New Richmond home, while sitting on the sofa, Napier inserted his finger inside of her vagina. *See State v. Zamora*, 12th Dist. Clermont Nos. CA2022-10-060 and CA2022-11-071, 2023-Ohio-1847, ¶ 7 (holding that sexual conduct occurs when there is penetration of the vaginal opening by a penis or other body part).

{¶ 34} Aubrey's trial testimony, in conjunction with her statements at the Mayerson Center, if believed by the jury, were sufficient to permit the jurors to find Napier guilty of Counts 1 and 4 of the indictment. That is, the evidence, if believed by the jurors, would support a conviction for at least two separate acts of rape that occurred at the New Richmond home between the months of June and August 2021. *See State v. Woodward*, 12th Dist. Butler No. CA2011-02-036, 2011-Ohio-6019, ¶ 23 (noting that it is well-settled law that the testimony of a rape victim, if believed, is sufficient to support each element of rape).

{¶ 35} The only argument presented by Napier regarding the weight of the evidence refers back to his argument concerning the sufficiency of the evidence related to the Eight Mile Creek incident. For the same reasons, he argues that his purported rape conviction related to the Eight Mile Creek incident was not supported by "substantial" evidence. But as discussed above, Napier was not convicted of rape for that incident and any argument concerning the weight of the evidence supporting the Eight Mile Creek offense is irrelevant to Counts 1 and 4. Accordingly, we overrule Napier's first and second assignments of error.

**B. Consecutive Sentences**

{¶ 36} Napier's third assignment of error states:

> THE CONSECUTIVE SERVICE OF THE PRISON TERMS IMPOSED ON COUNTS 1, 4, AND 8 WAS UNSUPPORTED BY THE RECORD.

{¶ 37} Napier argues that the record does not support the trial court's finding that consecutive sentences are not disproportionate to the danger Napier poses to the public.

**1. Applicable Law**

**a. Required Findings for Consecutive Sentences**

{¶ 38} When imposing consecutive sentences, a sentencing court is required "to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * *." *State v. Bonnell*, 140 Ohio St.3d 209,

2014-Ohio-3177, syllabus. That statute states:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 39} Stated more simply, to impose consecutive sentences, a sentencing court must find (1) "that the consecutive service is necessary to protect the public from future crime or to punish the offender[,]" (2) "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[,]" and (3) that at least one of the three conditions described in R.C. 2929.14(C)(4)(a), (b), or (c) apply. R.C. 2929.14(C)(4).

**b. Standard of Review—Felony Sentencing Appeals**

{¶ 40} R.C. 2953.08(G)(2) defines the standard of review for felony-sentencing appeals. *State v. Day*, 12th Dist. Warren Nos. CA2020-07-042 and CA2020-07-043, 2021-Ohio-164, ¶ 6. As applicable here, R.C. 2953.08(G)(2) provides:

> The appellate court may take any action authorized by this

- 10 -

division if it *clearly and convincingly* finds either of the following:

(a) *That the record does not support the sentencing court's findings under* division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

(Emphasis added.)

{¶ 41} "The consecutive sentence statute, R.C. 2929.14(C)(4), is one of the relevant statutes specifically mentioned in R.C. 2953.08(G)(2)." *State v. Richey*, 12th Dist. Clermont Nos. CA2022-08-038 thru CA2022-08-041, 2023-Ohio-336, ¶ 12. "Thus, there are two ways that a defendant can challenge consecutive sentences on appeal." *State v. Shiveley*, 12th Dist. Clermont No. CA2022-04-017, 2022-Ohio-4036, ¶ 7. "The defendant can argue either that the imposition of consecutive sentences is contrary to law because the trial court failed to make the necessary consecutive sentence findings required by R.C. 2929.14(C)(4), or that the record does not support the trial court's consecutive sentence findings made under R.C. 2929.14(C)(4)." *Richey* at ¶ 12, citing *Shiveley* at ¶ 7.

{¶ 42} In *State v. Gwynne*, 173 Ohio St.3d 525, 2023-Ohio-3851, the Ohio Supreme Court clarified the standard of review applicable to our review of consecutive sentence findings:

The plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record.

*Id.* at ¶ 5.

### 2. Analysis

{¶ 43} In this appeal, Napier does not dispute that the trial court made the consecutive sentence findings required by R.C. 2929.14(C)(4). Napier therefore concedes

- 11 -

that the trial court's decision to impose consecutive sentences was not clearly and convincingly contrary to law under R.C. 2953.08(G)(2)(b).

{¶ 44} Instead, Napier argues—pursuant to R.C. 2953.08(G)(2)(a)—that the record does not support the trial court's consecutive sentence findings under R.C. 2929.14(C)(4). Specifically, Napier challenges the trial court's findings that consecutive sentences are not disproportionate to the danger Napier poses to the public.

{¶ 45} We have reviewed the record of the sentencing hearing, the presentence-investigative report, and the victim impact statements. R.C. 2953.08(F)(1) and (3). We have also considered the evidence presented at trial and the jury verdicts. R.C. 2953.08(F)(2). Based on that review, we do not find that the trial court's finding—that consecutive sentences are not disproportionate to the danger Napier poses to the public—is clearly and convincingly not supported by the record.

{¶ 46} To the contrary, the trial court's finding in this regard is well supported by the record. Napier did not commit merely one incident of sexual molestation against Aubrey. Instead, over the course of a summer, he preyed on Aubrey repeatedly. He did so at a time when Aubrey was vulnerable both due to her age and because her mother was recuperating from a serious medical issue, sleeping most of the time or in the hospital, and unavailable to protect her. Napier's course of conduct in the underlying offenses supports the conclusion that he poses a significant danger to the public.

{¶ 47} The presentence-investigative report also details numerous concerning reports of Napier's conduct prior to the charged offenses. We will not delve into the details of those offenses here for purposes of the alleged victims' privacy. However, we note that separate individuals have accused Napier of multiple instances of sexually inappropriate behavior beginning in 2005 and as recently as 2018. In one of those instances, an 18-

month-old child left alone with Napier for a short time was found to have a bloodied and swollen penis. Examiners at Children's Hospital reported the injuries were consistent with sexual abuse. Napier was not charged with these offenses due to lack of evidence, or lack of cooperation by the victims and the victims' families. It is not clear whether the trial court credited these allegations, but they are part of Napier's social history as set forth in the presentence-investigative report and therefore they could be considered by the trial court. *See State v. Cooey*, 46 Ohio St.3d 20, 35 (1989) (holding that the content of presentence-investigative reports may include allegations that did not result in criminal charges, but which are relevant to the defendant's social history); *State v. Bittner*, 12th Dist. Warren No. CA2019-01-001, 2019-Ohio-3834, ¶ 23 ("Ohio law is clear that '[u]nindicted acts or not guilty verdicts can be considered in sentencing without resulting in error when they are not the sole basis for the sentence.' * * * Consequently, '[c]ourts have historically been permitted to consider hearsay evidence * * * and even offenses for which charges were not filed, but were addressed in the presentence investigation'"), quoting *State v. Thomas*, 8th Dist. Cuyahoga No. 101263, 2014-Ohio-5153, ¶ 27, and *State v. Ropp*, 3d Dist. Union No. 14-13-21, 2014-Ohio-2462, ¶ 4. These incidents lend further support to the conclusion that Napier presents a significant danger to the public.

{¶ 48} In arguing that he does not pose a danger to the public, Napier highlights the fact that prior to the current offenses, he had never been charged with a serious offense. It is true that Napier had a limited criminal history. However, a limited criminal history is not dispositive of the issue of whether an offender poses a danger to the public. *Shively*, 2022-Ohio-4036 at ¶ 23. An offender can demonstrate a likelihood of recidivism based on the underlying offenses having continued over a course of time. *Id*. Here, as described above, Napier's course of conduct of offenses against Aubrey demonstrated the danger he poses to the public.

{¶ 49} Napier also points to the "Static-99" evaluation, submitted with his presentence-investigative report, which indicated a low chance of recidivism. While an indicator of low recidivism is a factor in assessing danger to the public, there are no specific statutory factors that a court must exclusively rely upon for the danger-to-the-public finding under R.C. 2929.14(C)(4). *Shively* at ¶ 22. In this case, the other relevant factors clearly demonstrated that, notwithstanding the Static-99 assessment, Napier is a danger to the public.

{¶ 50} In sum, we defer to the trial court's factual findings regarding consecutive sentences. *Gwynne*, 2023-Ohio-3851 at ¶ 5. We do not find that those findings are clearly and convincingly not supported by the record. *Id.* We overrule Napier's third assignment of error.

### C. Ineffective Assistance of Counsel

{¶ 51} Napier's fourth assignment of error states:

APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE.

{¶ 52} Napier argues that his trial counsel was ineffective for failing to object to leading questions by the prosecutor and for failing to seek a lesser included offense instruction.

### 1. Standard of Review

{¶ 53} To prevail on an ineffective assistance of counsel claim, Napier must show his defense counsel's performance was deficient, and that he was prejudiced as a result. *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Defense counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, Napier must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different.

*Id.* at 694. The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Clarke* at ¶ 49. We strongly presume that defense counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence * * *." *Strickland* at 689.

**2. Analysis**

{¶ 54} Napier's two arguments in support of this assignment of error are premised on his argument, discussed above, that Aubrey's testimony concerning the Eight Mile Creek incident did not support a conviction on Count 1 or Count 4. Napier argues that his defense counsel should have objected to the prosecutor's leading questions concerning the manner in which Napier touched Aubrey's vagina. Napier contends that it was only by specifically suggesting that Napier's fingers went between the lips of Aubrey's vagina that the state "elicit[ed] testimony upon which a conviction could arguably be supported."

{¶ 55} Building on this argument, Napier argues that his trial counsel should have realized that Aubrey's testimony regarding the Eight Mile Creek incident could have reasonably supported an acquittal on rape and a conviction on the lesser included offense of gross sexual imposition. Napier contends that his trial counsel was ineffective for failing to request this lesser-included-offense instruction.

{¶ 56} As set forth in response to the first two assignments of error, Napier's rape convictions were not premised on the Eight Mile Creek incident but were instead premised on incidents of rape occurring at the New Richmond home. Therefore, even if Napier had demonstrated that his trial counsel was ineffective for failing to object and for failing to request a lesser-included instruction on Count 7 (which we do not find), he could not demonstrate prejudice under *Strickland*. Accordingly, these arguments are meritless. We

overrule Napier's fourth assignment of error.

### III. Conclusion

{¶ 57} Napier's convictions on Count 1 and 4 were supported by sufficient evidence and he has not demonstrated that they were against the weight of the evidence. We do not find that the trial court's consecutive sentence finding is clearly and convincingly not supported by the record. Napier has failed to establish that his trial counsel provided constitutionally deficient performance, or that he was prejudiced as a result.

{¶ 58} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.