[Cite as *State v. Nuthak*, 2024-Ohio-4730.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-02-017 |
| - vs - | : | O P I N I O N<br>9/30/2024 |
| | : | |
| SETH NUTHAK, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2023-08-1240

Michael T. Gmoser, Butler County Prosecuting Attorney, and Willa Concannon, Assistant Prosecuting Attorney, for appellee.

Michele Temmel, for appellant.

**HENDRICKSON, J.**

{¶ 1}   Appellant, Seth Nuthak, appeals from the sentence he received in the Butler County Court of Common Pleas following his guilty plea to two counts of gross sexual imposition.  For the reasons set forth below, we affirm his sentence.

{¶ 2}   On August 30, 2023, appellant was indicted on three counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), felonies of the third degree.  The charges

arose out of allegations that between November 1, 2019 and May 10, 2023, while at A.G.'s home in Fairfield, Butler County, Ohio and at appellant's home in Sharonville, Hamilton County, Ohio, appellant sexually abused A.G. when she was between seven and ten years old. A.G. has cerebral palsy, is nonverbal, and is confined to a wheelchair. Appellant repeatedly touched A.G.'s vagina for purposes of sexual gratification when changing her diaper.

{¶ 3} On November 2, 2023, following plea negotiations, appellant pled guilty to two reduced counts of gross sexual imposition in violation of R.C. 2907.05(A)(1), felonies of the fourth degree, in exchange for one count of gross sexual imposition being dismissed. Defense counsel agreed that the offenses were not allied as the sexual abuse pled to in each count occurred at different times and in different locations—one offense occurring in Butler County and the other in Hamilton County as part of a course of conduct. Following a Crim.R. 11(C) plea colloquy, the trial court accepted appellant's guilty plea and found him guilty.

{¶ 4} The court ordered a presentence-investigative report (PSI) and scheduled sentencing for December 14, 2023. Defense counsel requested a "CCC assessment" so that the court could entertain imposing community control sanctions. In response, the court questioned whether appellant had a "record or history of these types of offenses." Though appellant did not have any prior convictions for similar sexual offenses, the state informed the court that "there is a holder in Indiana for a similar offense, but [appellant] has not been convicted or sentenced." The court indicated, "I'll have him screened for CCC, but I'm not making any promises on that."

{¶ 5} At the December 14, 2023 sentencing hearing, the trial court heard from defense counsel, appellant, and the state. Defense counsel recognized the "serious nature of th[e] offense[s]" but argued it was a mitigating factor that appellant "did

- 2 -

everything he could to stop" his criminal behavior after voluntarily confessing his wrongdoing—first to A.G.'s family, then to his church, and finally to the police when he was interviewed. Defense counsel noted that appellant had started treatment on his own initiative following his disclosure of the sexual abuse and he had taken responsibility for his wrongdoing by entering a guilty plea.

{¶ 6} Appellant then addressed the court, stating that "there was no evidence of a crime until I brought it forward." Appellant claimed that he had a pornography addiction which led to the sex offenses being committed against A.G. He claimed A.G. was his "only victim that blossomed as most addictions go." He also noted that, A.G., who is nonverbal and physically disabled, had not "said anything" or "done anything" in response to his abuse. He indicated A.G. could have communicated about the events through Morse code, by tapping her nose and forehead—a method of communication she uses to speak to her parents, appellant, and two or three others.

{¶ 7} Appellant advised the court that he did not think a prison term would help him, stating:

> [The police] picked me up at one of my support groups. What I'm afraid of is I'm not in an environment that's conducive to staying sober from this. I'm around a whole bunch of other people that have this same problem. . . . I have everything in place in Missouri to register as a sex offender, to get a psychiatrist to—I have a support group of people already in place there, and my parents have agreed to give me a safe place to go so I can continue in my recovery. And that's what I need to get back to as quickly as possible.

Appellant was concerned that being sent to prison would cause a relapse, stating, "'[M]y biggest fear right now is I'm going to relapse when I'm around other people that just have this problem." He further contended that he should not be imprisoned because he "need[s] to help other people so they don't wind up like this. And most importantly, that they can get the help they need before another little girl gets hurt."

{¶ 8}   Appellant once again claimed A.G. was his "only victim," which prompted the court to ask, "How do we know that?"  Appellant responded, "why would I voluntarily admit to one and not to everything else?"  Appellant further claimed he had to admit to wrongdoing against any victims "as part of my recovery and making amends and paying it back."  He then offered that he has "been clean off every bit of sex, pornography, and related issues . . . for 219 days.  I've served four months.  This is not something that's easy to stay clean from.  Most people have relapses.  I've not relapsed in that—in that entire time from the moment I sought help to now."  In response, the Court noted that appellant had been in jail, without the opportunity to access pornography or victimize children for most of the period he touted as being "clean."

{¶ 9}   The state then addressed the court, noting that appellant was a close family friend of A.G.'s father, and he had been entrusted as a caretaker for A.G.  For a period of time, appellant lived in the same home as A.G.  The state noted, "in addition to being wheelchair-bound and nonverbal, [A.G.] isn't toileted, so she wears a diaper.  One of the allegations that [appellant] pled guilty to was that he reached under her diaper during a diaper change and sexually touched her."

{¶ 10}  The state noted that appellant "wants to focus on treatment and doesn't want to be punished for these offenses."  The state indicated appellant had been more forthcoming about his criminal conduct when he disclosed his actions to A.G.'s father and his church council, but once "the police got involved, and it became more real that there were legal consequences for these actions, [appellant] was less forthcoming and really minimized his actions."  The state took issue with appellant claiming A.G. was his only victim, noting that appellant was "facing charges in Indiana for doing something similar with his own daughter, who is also delayed."  The state stated:

The state continues to be concerned with [appellant's]

- 4 -

repeated pleas that this was his only victim. In fact, when he first confessed to the family, he specifically referenced his daughter, who is not the victim in this case that is—the charges that came out of Indiana – and the victim in this case —he would repeatedly call them his victims. So he's already pulled back on that.

And he also told the church council that he has many victims because he would—when being around children—hide under a blanket and masturbate in their presence. He has used the term that he has many victims. And today he has backpedaled on that to tell the court that [A.G.] . . . has been his only victim. And that's just not the evidence that . . . we've had in this case, that he has had very different words when he was just believing he was confessing to family and church for internal forgiveness.

But now that it's court involved, he certainly backpedaled on that, and we—the State takes immense concern that he has not just a porn addiction, but that he is purposedly seeking out the most vulnerable of our population, children who have disabilities. And to say that [A.G.] never told—a girl that is limited to Morse code with her nose and chin—just strikes a chord.

{¶ 11} After hearing from the state, the court noted that it had "grave concerns, which have been very much aggravated by what I've heard thus far today." The court then indicated that in addition to considering the statements made by appellant, defense counsel, and the state, it was considering the record of the charges, appellant's guilty plea, the findings set forth on the record, the PSI, the principles and purposes of sentencing under R.C. 2929.11, the seriousness and recidivism factors set forth in R.C. 2929.12, and whether community control sanctions were appropriate under R.C. 2929.13 in imposing an appropriate sentence. The court noted that given that appellant had brought his criminal actions to everyone's attention and admitted committing the heinous acts against A.G., it "expected a greater degree of insight into the seriousness of the Defendant's conduct, but sadly, the Court is very much disappointed." The court found appellant was not amenable to available community control sanctions and that

- 5 -

"concurrent sentences are not appropriate based upon the Defendant's complete lack of insight, I believe, into the seriousness of his conduct and, quite frankly, a need to protect the public in this case and to protect other innocent children who might be wheelchair bound and nonverbal." The court sentenced appellant to 18 months in prison on each count of gross sexual imposition and ran the sentences consecutively, for an aggregate prison term of 36 months. The court also classified appellant as a Tier I sex offender.

{¶ 12} Appellant appealed his sentence, raising the following as his sole assignment of error:

{¶ 13} THE TRIAL COURT ERRED TO THE PREJUDICE OF [APPELLANT] WHEN IT SENTENCED HIM TO CONSECUTIVE SENTENCES IN THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS.

{¶ 14} A felony sentence is reviewed under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 1. R.C. 2953.08(G)(2) states that an appellate court may modify or vacate a sentence if the court finds "by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id*.

{¶ 15} When imposing consecutive sentences, a sentencing court is required "to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell*, 2014-Ohio-3177, syllabus. Specifically, the sentencing court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16,

- 6 -

2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 16} Though a trial court must make the required findings at the sentencing hearing, "a word-for-word recitation of the language of the statute is not required." *Bonnell* at ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

{¶ 17} In the present case, the trial court stated the following in imposing consecutive sentences:

> Pursuant to Revised Code Section 2929.14, in the case of multiple prison terms being imposed, the Court will find that any presumption as to concurrent sentences has been rebutted in this case. I think consecutive sentences are necessary to adamantly protect the public from future crime and to punish this Defendant, and that consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and the danger that this Defendant poses to the public.
>
> And furthermore, this Court will find that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by the two or more multiple offenses so committed were so great or unusual that no single prison term for any of the offenses committed as part of the courses of conduct adequately reflects the seriousness of the Defendant's conduct.

The court incorporated these findings into appellant's sentencing entry.

{¶ 18} Appellant concedes that the trial court made the required statutory findings at the sentencing hearing and in the sentencing entry to impose consecutive sentences. Nonetheless, he argues that the record does not support those findings as "nothing on the record . . . indicate[s] [he] would commit any future crime(s)," given his limited criminal history. He further contends that "by taking responsibility he demonstrated he is not a danger to the public, nor were consecutive sentences necessary to protect the public from future crime."

{¶ 19} We find, contrary to appellant's assertions, that the record supports the trial court's consecutive sentencing findings. The record reflects the serious nature of appellant's conduct. He preyed on an extremely vulnerable individual—a child who is nonverbal and confined to a wheelchair. He abused his position of trust to commit sexual offenses against A.G.—touching her vagina for purposes of sexual gratification when acting as a caretaker and changing her diaper. The abuse happened multiple times, over multiple years, ranging from the time A.G. was 7 years old to when she was 10 years old.

{¶ 20} Appellant poses a risk of reoffending, something he seemed to acknowledge when he stated that "most people have multiple relapses" and his "biggest fear now is I'm going to relapse when I'm around other people that have this problem." That he did not have an extensive criminal history "is not dispositive of the issue of whether an offender poses a danger to the public. . . . An offender can demonstrate a likelihood of recidivism based on the underlying offenses having continued over a course of time." (Internal citation omitted.) *State v. Napier*, 2024-Ohio-1837, ¶ 48 (12th Dist.).[1] Such is the case here. The record reflects that appellant engaged in a course of conduct

---

[1]. The record reflects that in 2017, appellant had a felony conviction for fleeing a police officer in a motor vehicle. Though this is the only felony conviction appellant had on his record, at the time of sentencing, he was facing charges of felony sexual battery in Indiana for conduct related to his daughter.

wherein A.G. was sexually abused over a number of years, from November 2019 through May 2023, on multiple instances, and in multiple counties.

{¶ 21} Furthermore, though appellant claimed A.G. was his only victim, he appeared to acknowledge other victims existed. Before being cut off by the court, appellant stated the following:

> [Appellant]: If I could just clarify when I said [A.G.'s] my only victim, I meant the only one that I physically touched, and I had pled guilty to that. The other—the other one was—
>
> THE COURT: Your client probably ought to be real careful that he's not digging a hole for his Indiana case here. I'm sure you've advised him appropriately.

In addition to facing charges in Indiana for felony sexual battery, appellant had also made admissions to his church council that he had many victims, as he would hide under a blanket and masturbate in children's presence. Given the heinous nature of the crimes appellant committed and the danger he posed to the public, consecutive sentences were warranted.

{¶ 22} The record further reflects that consecutive sentences were necessary to protect the public and punish appellant. Appellant's statements at sentencing appeared to minimize his conduct. He indicated the reason he acted on his reprehensible pedophilic desires was because of a porn addiction. He stated, "I had the pornography addiction for so long, and I didn't know where to go to for help." The trial court stated it was "appalled" that appellant tried to blame his heinous conduct "on some kind of pornography addiction" and found that appellant's statements at sentencing demonstrated a lack of insight into the despicable nature of his conduct. Given appellant's lack of insight and his choice of victim, a disabled, nonverbal child, the record supported the trial court's finding that "consecutive sentences are necessary to adamantly protect the public from future crime and to punish [appellant]."

{¶ 23} Accordingly, we find that the trial court's consecutive sentencing findings made pursuant to R.C. 2929.14(C)(4) were not clearly and convincingly unsupported by the record. Appellant's sole assignment of error is overruled.

{¶ 24} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.