[Cite as *State v. Pichardo-Reyes*, 2017-Ohio-8534.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2016-09-184 |
| | : | O P I N I O N |
| - vs - | | 11/13/2017 |
| | : | |
| JUAN PICHARDO-REYES, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2016-03-0348

Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 315 South Monument Avenue, Hamilton, Ohio 45011, for defendant-appellant

**PIPER, J.**

{¶ 1}  Defendant-appellant, Juan Reyes, appeals his convictions and sentence in the Butler County Court of Common Pleas for felonious assault and domestic violence.

{¶ 2}  Reyes and Carmen Lopez lived together and had three children.  On the evening in question, Reyes went to a friend's house where he consumed alcohol.  Lopez called Reyes' friend and asked when Reyes would be home because he had to work the next

morning. Reyes' friend refused to give information to Lopez. Lopez then informed Reyes' friend that Reyes would be locked out of the home if he returned too late. Lopez then locked and chained the door to the apartment and placed a piece of furniture in front of the door.

{¶ 3} Reyes returned home around 1:00 a.m., and was unable to unlock the door. After Reyes knocked on the door and received no answer, he sat outside of the apartment until Lopez unlocked the door and removed the piece of furniture. Once Lopez unlocked the door, she hid in a kitchen closet because she feared repercussion for locking the door. Reyes searched the apartment for Lopez and found her in the kitchen closet. Reyes then dragged Lopez toward their bedroom, pulling out part of her hair during the process. A physical struggle then ensued between Lopez and Reyes, which caused the children to awake and come out of their bedroom.

{¶ 4} Lopez ran with the children into the bedroom and barricaded the door. During this time, Reyes retrieved a knife from the kitchen and used the knife when attempting to open the bedroom door. Reyes screamed that Lopez was going to die, and he eventually pushed the door open. Lopez and the oldest child were able to knock the knife from Reyes' hand, and Lopez hid the knife under the living room furniture. Reyes followed Lopez into the living room and began to strangle her.

{¶ 5} A neighbor heard the fighting and knocked on Reyes and Lopez's door. The neighbor's knocking allowed Lopez to free herself from Reyes, and she and her son ran to the door. The child told the neighbor that Reyes had a knife and was trying to kill them. The neighbor observed marks and injuries on both Lopez and Reyes, and ran to her apartment to call 9-1-1.

{¶ 6} Once police arrived, Lopez explained that Reyes had bit her, punched her, and also pulled out some of her hair before strangling her. Police then took photographs of Lopez's injuries, as well as various places in the apartment where there was blood. Lopez

- 2 -

also told police that she scratched and bit Reyes during the struggle.

{¶ 7} Reyes was treated for his injuries at the hospital, and subsequently charged with felonious assault and domestic violence. Reyes pled not guilty, and the matter proceeded to a three-day trial. The jury found Reyes guilty on both counts and the trial court sentenced Reyes to five years in prison for count one and 180 days on count two. Reyes was ordered to serve the sentences concurrently. Reyes now appeals his convictions and sentence, raising the following assignments of error. We will address Reyes' assignments of error together when appropriate and interrelated.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR FELONIOUS ASSAULT IN COUNT ONE, AND THE VERDICT ON THIS COUNT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR DOMESTIC VIOLENCE IN COUNT TWO, AND THE VERDICT ON THIS COUNT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} Reyes argues in his first and second assignments of error that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 13} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is

whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 14} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶ 15} In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.* Although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 16} Reyes was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides that no person shall, "cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." Reyes was also

convicted of domestic violence in violation of R.C. 2919.25(A), which provides, "no person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶ 17} After reviewing the evidence, we find that Reyes' convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. The state presented testimony from Lopez, who explained what happened on the night in question. Lopez testified that she and Reyes share three children, who were nine, seven, and six years old at the time of the trial. She and Reyes have been in a relationship, and live together in Butler County.

{¶ 18} Lopez testified that on the night in question, Reyes left the apartment with a bottle of rum, and informed her that he was going to visit a friend in the next apartment building. Lopez attempted to call Reyes later that night, but spoke with his friend instead. Lopez informed the friend that if Reyes tried to come home in the early hours of the morning, he would not be able to get into the apartment. Lopez then locked the door and secured it with a chain lock. She also pushed a piece of furniture against the door. Reyes returned to the apartment around 1:00 a.m. and could not get inside given the locked and barricaded door. However, Lopez eventually moved the furniture and unlocked the door so that Reyes could get into the apartment.

{¶ 19} Lopez testified that she hid in the kitchen closet so that Reyes could not find her because she "knew he was going to get mad for what [she] did." Lopez further testified that she feared for her safety, and that Reyes began to look for her around the apartment once he entered. When Reyes found Lopez, he grabbed her by her hair and dragged her to their bedroom. During this time, Reyes pulled a chunk of Lopez's hair from her scalp and threw it down. The children awoke and came into the area where Reyes was struggling with Lopez. Lopez testified that the children began screaming to their father to let her go.

{¶ 20} Lopez and Reyes continued struggling, and Lopez took a broomstick from the

kitchen closet to protect herself. During the struggle, the stick broke and Reyes grabbed Lopez's hair again. Lopez fought back and scratched Reyes, and Reyes punched her, hit her, and bit her. The biting was so severe that at the time of trial Lopez was still missing skin on some areas and was scarred on other areas of her body.

{¶ 21} As the struggle continued, the couple's oldest child hit Reyes with the broken broom handle when attempting to free his mother, and Lopez bit Reyes on the arm. After being hit in the back and bitten, Reyes went to the bathroom to look at his injuries in the mirror. During this time, Lopez ran into the bedroom with the children where she could hear Reyes in the kitchen retrieving a knife. Reyes then pushed the knife between the door-frame and door, trying to gain entrance to the bedroom where Lopez and the children were hiding. Lopez testified that the knife was serrated and approximately 12 inches long. Reyes yelled for Lopez and the children to open the door and told them that Lopez was going to die.

{¶ 22} Lopez testified that Reyes was eventually able to gain entrance into the bedroom and that she began to struggle with him over the knife. The oldest child pushed Reyes, and Reyes fell to the ground. The knife fell out of Reyes' hand to the floor, and Lopez cut her foot when she stepped on the knife. Lopez then took the knife and hid it under the furniture in the living room. Reyes ran after Lopez and began to strangle her. At that time, the couple heard a knock at the door.

{¶ 23} When Reyes stopped strangling Lopez, she ran and opened the door. A neighbor was standing at the door and screamed when she saw blood on Lopez. Lopez and Reyes then waited in the hallway until the police arrived. The police took Lopez's statement and also photographed her injuries. The photographs were admitted into evidence, and depicted scratch marks, bites, and bruises Lopez incurred during her struggles with Reyes that night.

{¶ 24} The state next presented testimony from the neighbor who called 9-1-1 on the

night in question. The neighbor testified that she lives in an apartment next to Reyes and Lopez, and that on the night of the incident, she awoke when she heard a loud noise. The neighbor testified that the noise she heard sounded like a fight and that the fighting was so loud that she thought "somebody was getting killed."

{¶ 25} The state then called Reyes and Lopez's son. The son testified that he was sleeping on the night in question and was awakened when his father screamed in anger. When the son left his bedroom, he saw his parents struggling in the living room with Reyes on top of Lopez. The son testified that his father was hitting his mother and that she was trying to get Reyes off her. He also testified that after his father tried to hit his mother with the broom handle, his father went to the kitchen for the knife. The son testified that he, his siblings, and his mother tried to stop Reyes from entering the bedroom where they were hiding, and that his father forced his way into the room while holding the knife.

{¶ 26} The son testified that he tried to get his father onto the floor while his mother tried to get the knife from Reyes' hands. Once the knife came loose from Reyes' hands, the son watched as Lopez took the knife and threw it under the furniture in the living room. The son also testified to the neighbor coming to the door, and also that he spoke with police on the night of the incident.

{¶ 27} The state then presented testimony from an officer who responded to the 9-1-1 call. The officer testified that he arrived at the apartment and immediately observed wounds to both Lopez and Reyes. Lopez directed him to the knife and broom stick handle in the apartment, which the officer collected as evidence. The officer also took pictures of both Reyes and Lopez and their injuries.

{¶ 28} Reyes testified in his own defense, and claimed that he did not harm Lopez on the night in question and that he never threatened her with a knife. He also testified that Lopez hit him in the head once he entered the apartment and that she immediately put a

knife to his neck and yelled "don't move." Reyes testified that his son could not have seen anything because by the time the son left the bedroom, Reyes was already out in the hallway awaiting the police.

{¶ 29} Based on the jury's verdict, it found the testimony of the state's witnesses more credible than Reyes regarding whether Reyes assaulted Lopez. Because the jury was in the best position to judge the credibility of the witnesses, we will not disrupt the jury's determination regarding credibility. The state presented sufficient evidence to support Reyes' convictions, and such were not against the manifest weight of the evidence. As such, Reyes' first and second assignments of error are overruled.

{¶ 30} Assignment of Error No. 3:

{¶ 31} THE STATE OF OHIO ENGAGED IN PROSECUTORIAL MISCONDUCT AT TRIAL.

{¶ 32} Reyes argues in his third assignment of error that the state engaged in prosecutorial misconduct at the trial by asking him during cross-examination about his silence to police officers.

{¶ 33} For a conviction to be reversed on the basis of prosecutorial misconduct, a defendant must prove the prosecutor's acts were improper and that they prejudicially affected the defendant's substantial rights. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. To demonstrate prejudice, a defendant must show that the improper remarks or questions were so prejudicial that the outcome of the trial would clearly have been otherwise had they not occurred. *State v. Jones*, 12th Dist. Butler No. CA2006-11-298, 2008-Ohio-865, ¶ 21.

{¶ 34} The focus of "an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon culpability of the prosecutor." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. As such, prosecutorial misconduct "is not

grounds for error unless the defendant has been denied a fair trial." *State v. Olvera-Guillen*, 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶ 27.

{¶ 35} As no objections were raised to the claimed instances of prosecutorial misconduct, we will review such for plain error. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error does not exist unless the error is obvious and but for the error, the outcome of the trial would have been different. *State v. Blacker*, 12th Dist. Warren No. CA2008-07-094, 2009-Ohio-5519, ¶ 39. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 12.

{¶ 36} The state is prohibited from using a defendant's post-*Miranda* silence to impeach an exculpatory story told for the first time at trial. *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240 (1976). Such evidence of silence cannot be used as substantive evidence of the defendant's guilt in the prosecution's case in chief. *State v. Lamb*, 12th Dist. Butler Nos. CA2002-07-171 and CA2002-08-192, 2003-Ohio-3870. Likewise, the Ohio Supreme Court found that use of a defendant's post-arrest, pre-*Miranda* silence as part of the state's case in chief is a violation of the defendant's right to remain silent. *State v. Combs*, 62 Ohio St.3d 278, 281-82 (1991).

{¶ 37} However, using evidence of a defendant's pre-*Miranda* silence to impeach his or her testimony is not a violation of due process when a defendant chooses to testify at trial. *Fletcher v. Weir*, 455 U.S. 603, 102 S. Ct. 1309 (1982). This is because the defendant has not relied on *Miranda* warnings triggering the implicit assurance that his silence will not be used against him. *Lamb* at ¶ 23.

{¶ 38} Reyes claims that the state engaged in prosecutorial misconduct when it asked him during cross-examination about his post-arrest, post-*Miranda* silence. During cross-

examination, the state asked Reyes questions about his testimony that Lopez put a knife to his throat and hit him. "You would agree with me that today is the first day you've ever told anybody that [Lopez] came after you with a knife and a stick* * *." The state also questioned Reyes as to whether he agreed or refused to sign the Miranda warnings card that were offered to Reyes in Spanish.[1]

{¶ 39} While Reyes argues that the state asked him questions about his post-arrest and post-*Miranda* silence, the record indicates that the prosecutor asked Reyes about his statements to police in an attempt to impeach Reyes about his prior inconsistent statement. During the state's case-in-chief, the officer, who spoke Spanish fluently, testified that he spoke with Reyes after being dispatched to the apartment. The officer testified that Reyes told him what happened that night. However, on the stand, Reyes testified that no one spoke to him in Spanish, and thus, he did not understand what the officer said to him or asked him to sign.

{¶ 40} During Reyes' cross-examination, he testified that the only thing the officer said to him in Spanish was "talk to your lawyer." The state then inquired as to whether Reyes remembered the officer speaking to him in Spanish and reading *Miranda* rights to him in Spanish. Reyes then testified "no, they never spoke to me in Spanish." As noted previously, the state asked Reyes whether his testimony was the first time he alleged that Lopez hit him and held a knife to his throat. Reyes then answered, "since that incident happened, I never had the opportunity to tell this to anybody except my lawyer. I was never given the chance to tell my side."

{¶ 41} The record indicates that the state was cross-examining Reyes with impeachment evidence that Reyes did not remain silent when questioned by police. Instead,

---

1. The record indicates that Reyes and Lopez only speak Spanish, and did not speak or understand English.

Reyes made a prior inconsistent statement to police and did not assert that Lopez threatened him with a knife until his testimony at trial. Thus, the post-arrest and post-*Miranda* issue raised by Reyes is not applicable to the case at bar. There is no error, plain or otherwise, given that the state was within its right to impeach Reyes during cross-examination. Reyes' third assignment of error is overruled.

{¶ 42} Assignment of Error No. 4:

{¶ 43} THE TRIAL COURT ERRED TO THE PREJUDICE [SIC] BY FAILING TO GRANT A DEFENSE MOTION FOR MISTRIAL.

{¶ 44} Reyes argues in his fourth assignment of error that he should have been granted a mistrial.

{¶ 45} A mistrial should not be ordered merely because of some error or irregularity at trial. *State v. Partin*, 12th Dist. Butler No. CA2012-09-189, 2013-Ohio-2858. Instead, "mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Garner*, 74 Ohio St.3d 49, 59 (1995). A trial court's decision to deny a motion for a mistrial is within the sound discretion of the trial court. *State v. Gilbert*, 12th Dist. Butler No. CA2010-09-240, 2011-Ohio-4340, ¶ 83. "An appellate court will not disturb the exercise of this discretion absent a showing that the accused has suffered material prejudice." *State v. Blankenship*, 102 Ohio App.3d 534, 549 (12th Dist.1995).

{¶ 46} Reyes claims that he was entitled to a mistrial because Lopez testified that some of the injuries seen in a set of photographs were from a prior altercation. During Lopez's direct examination, the state showed her a series of photographs depicting injuries she sustained on the night in question. Photographs 11-17, however, showed injuries from a previous altercation, and Lopez testified that the injuries were "from before."

{¶ 47} Reyes objected immediately, and the trial court sustained the objection and offered the following curative instruction. "Ladies and gentlemen, I'm instructing you to

disregard any questions or testimony about Exhibits 11 through 17, okay? No pictures were shown, but just ignore all questions and/or all questions concerning that." Curative instructions "are presumed to be an effective way to remedy errors that occur during trial." *State v. Trzeciak*, 12th Dist. Brown No. CA2014-06-010, 2015-Ohio-2219, ¶ 24. A jury is presumed to follow the court's instructions, including curative instructions, and the record reveals no evidence that the jury failed to follow the trial court's instructions. *State v. Tyree*, 12th Dist. Fayette No. CA2016-09-012, 2017-Ohio-4228.

{¶ 48} Given the trial court's curative instruction, as well as the fact that the jury never saw any of the photographs, we find the trial court did not abuse its discretion in denying Reyes' request for a mistrial. Reyes was not denied the opportunity for a fair trial, and he has not shown in any way that he was prejudiced by Lopez's brief comment. Reyes' fourth assignment of error is overruled.

{¶ 49} Assignment of Error No. 5:

{¶ 50} APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.

{¶ 51} Reyes argues in his fifth assignment of error that he was denied his right to effective assistance of counsel.

{¶ 52} To prevail on an ineffective assistance of counsel claim, appellant must show his trial counsel's performance was deficient, and that he was prejudiced as a result. *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49; *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id. at 694.*

{¶ 53} The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Clarke* at ¶ 49. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7.

{¶ 54} Reyes first claims that his counsel was ineffective for failing to object to his claimed instance of prosecutorial misconduct. However, and as addressed in Reyes' third assignment of error, we determined that no error occurred when the prosecutor impeached Reyes' testimony through reference to his prior inconsistent statement. Whether or not Reyes' counsel objected, the prosecutor did not engage in misconduct, and Reyes did not receive ineffective assistance of counsel.

{¶ 55} Reyes also claims that he received ineffective assistance of counsel because his trial counsel did not pursue self-defense jury instructions. However, the record indicates a self-defense instruction was not supported by the evidence offered at trial. Therefore, counsel's conduct was not deficient due to the lack of any efforts to secure a jury instruction for self-defense.

{¶ 56} To establish the affirmative defense of self-defense, a defendant must prove by a preponderance of the evidence the following three elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid danger. *State v. Ray*, 12th Dist. Butler No. CA2012-10-213, 2013-Ohio-3671.

{¶ 57} The evidence did not support a determination that the elements of self-defense were established. Reyes did not establish that he was not at fault in creating the altercation.

Nor was Reyes able to establish an honest reasonable belief he had to use force such as biting Lopez, tearing her hear out, or punching her to escape any danger she caused him. Instead, Reyes testified that he only pushed Lopez off of him and attributed Lopez's hair being pulled out to a medical condition she suffered where she lost her hair. He never established that he took any action in direct response to a fear for his safety or as the only means of escaping Lopez. As such, Reyes was not entitled to a jury instruction on self-defense and his trial counsel was not deficient for not objecting to the jury instructions.

{¶ 58} After reviewing the record, Reyes received effective assistance of counsel at trial, and his fifth assignment of error is overruled.

{¶ 59} Assignment of Error No. 6:

{¶ 60} THE TRIAL COURT ERRED IN IMPOSING CONCURRENT SENTENCES FOR ALLIED OFFENSES OF SIMILAR IMPORT.

{¶ 61} Reyes argues that is convictions should have merged.

{¶ 62} Pursuant to R.C. 2941.25, Ohio's allied-offenses statute, the imposition of multiple punishments for the same criminal conduct is prohibited. *State v. Rodriguez*, 12th Dist. Butler No. CA2015-02-024, 2016-Ohio-452. If any of the following occurs, the defendant may be convicted and sentenced for multiple offenses: "(1) the offenses are dissimilar in import or significance — in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23.

{¶ 63} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. An appellate court

- 14 -

applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 14.

{¶ 64} After reviewing the record, we find that the convictions were not allied offenses. The conduct supporting the felonious assault was Reyes' attempt to stab Lopez with the knife. The domestic violence charge was supported by evidence that Reyes pulled Lopez's hair, punched her, scratched her, and bit her repeatedly. As such, Reyes' crimes were committed with separate and identifiable conduct of attempting to stab Lopez with the knife and then actually causing her physical harm through the punches, scratches, and bites.

{¶ 65} The separate conduct of attempting to stab and actually inflicting physical harm on Lopez also resulted in separate harm to Lopez. The felonious assault was premised upon Reyes' attempt to stab Lopez, while the domestic violence harmed Lopez through physical injury. As such, and based on the facts of this case, Reyes' convictions were not allied offenses. His sixth assignment of error is, therefore, overruled.

{¶ 66} Assignment of Error No. 7:

{¶ 67} APPELLANT WAS DENIED THE RIGHT TO A FAIR TRIAL DUE TO CUMULATIVE ERROR.

{¶ 68} Reyes argues that the cumulative impact of claimed errors denied him a fair trial.

{¶ 69} According to the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. McClurkin*, 12th Dist. Butler No. CA2007-03-071,

2010-Ohio-1938, ¶ 105. However, because we have found that no errors occurred during Reyes' trial, we find that he was not deprived of a fair trial, and the cumulative error doctrine is inapplicable. Reyes' seventh assignment of error is overruled.

{¶ 70} Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.