[Cite as *State v. Chisenhall*, 2025-Ohio-4893.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO, :

    Appellee, :

vs. :

GARY CHISENHALL, :

    Appellant. :

:

CASE NO. CA2025-03-018

OPINION AND
JUDGMENT ENTRY
10/27/2025

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2023 CR 381

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Zachary K. Garrison, for appellee.

Jon R. Sinclair, for appellant.

# **O P I N I O N**

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Gary Chisenhall, appeals from his conviction and sentence in the Clermont County Court of Common Pleas for unlawful sexual conduct with a minor. For the reasons set forth below, we affirm his conviction and sentence.

## I. FACTS & PROCEDURAL HISTORY

{¶ 2}   On June 13, 2023, appellant was indicted on 40 counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), felonies of the third degree. The charges arose out of allegations that between August 1, 2021 and January 5, 2022, appellant, who was born in August 1978 and was more than ten years older than the victim, engaged in sexual relations with "Ava," a 14-year-old girl born in July 2007.[1] The sexual relations included vaginal intercourse, anal intercourse, digital penetration of the vagina, fellatio, and cunnilingus. The offenses occurred at Ava's mother's home in Cincinnati, Hamilton County, Ohio, at appellant's girlfriend's home in Batavia, Clermont County, Ohio, and at a storage facility in Batavia Township, Clermont County, Ohio.

{¶ 3}   Appellant pled not guilty to the charges, and a three-day jury trial was held in February 2025. At trial, Ava testified that she has known appellant since she was approximately five years old, as appellant was a friend of her stepfather. Ava was also friends with appellant's girlfriend's teenage daughter, "Phallon."

{¶ 4}   In July 2021, around her 14th birthday, Ava and appellant started to grow closer as Ava confided in appellant about trouble she had with her stepfather. On her 14th birthday, Ava and appellant exchanged cell phone numbers. They started communicating regularly, exchanging text messages, phone calls, video calls, and emails. The two also started spending more time together in person. Ava smoked marijuana and consumed marijuana cookies with appellant. Appellant gave her gifts, including a stuffed animal, jewelry, and his shirts to wear.

{¶ 5}   Ava and appellant's relationship evolved from a friendship into a romantic

---

1. To protect the privacy of the victim and other minors who participated in the proceedings against appellant, this court will use pseudonyms to refer to them. *See State v. Napier*, 2024-Ohio-1837, ¶ 3, fn. 1 (12th Dist.); *State v. Venters*, 2025-Ohio-3111, ¶ 2, fn. 1 (12th Dist.). *See also* Ohio Const., art. I, § 10a(A)(1) (requiring that victims in the criminal and juvenile justice systems "be treated with fairness and respect for the victim's safety, dignity and privacy").

relationship. Ava testified that in late 2021, she had come to love appellant "like a boyfriend" and appellant had told her that he loved her too. Ava and appellant spent time alone together at Ava's mother's home in Cincinnati and time together at appellant's girlfriend's home in Batavia. For a month, around September 2021, appellant moved into Ava's mother's home, where he had his own room. Ava testified that appellant sometimes slept in the same bed as her at her mother's home. Ava also recalled instances where she and appellant slept together on the living room sofa at appellant's girlfriend's home.

{¶ 6}   Ava and appellant's relationship turned physical. Ava recalled the first time she and appellant engaged in sexual activity occurred at her mother's house. Appellant was holding Ava while the two were in bed together. He began kissing her and then moved his hand down her pants, under her clothes, and put his fingers inside her vagina. The two then had vaginal intercourse. In addition to vaginal intercourse, Ava performed fellatio on appellant and appellant performed cunnilingus on Ava that day.

{¶ 7}   Ava also recalled the first time she and appellant engaged in sexual activity at appellant's girlfriend's house. Ava testified that appellant put his fingers inside her vagina, performed cunnilingus on her, she performed fellatio on appellant, and the two engaged in vaginal intercourse. This occurred on the living room sofa, while appellant's girlfriend was at work.

{¶ 8}   Ava testified she also had vaginal intercourse with appellant at a storage unit he rented. Ava testified that appellant kept a mattress in the storage unit. Ava recalled that on that occasion, appellant had used a condom, which he had pulled out of his coat pocket.

{¶ 9}   Ava testified that in September 2021, while appellant was living at her mother's home, she and appellant engaged in vaginal sex while she was on her period. Ava testified she remembered this event as she did not feel "okay" about having sex while

on her period. She also recalled seeing blood on the condom when she and appellant were finished having sex.

{¶ 10} Ava recalled another time she and appellant had vaginal intercourse at her mother's home. Ava remembered that sexual encounter as she had been on top of appellant when her mother walked into her bedroom. Sometime after that event, appellant moved out of Ava's mother's residence and back into his girlfriend's home.

{¶ 11} Ava also remembered having vaginal intercourse with appellant at her mother's house around December 23, 2021. Ava remembered feeling guilty for having sex with appellant because appellant's girlfriend had given her a Christmas gift. The final time Ava had sex with appellant was shortly after the New Year, around January 5, 2022. The two had engaged in vaginal intercourse at her mother's house.

{¶ 12} In addition to the sexual encounters described above, Ava testified that she also had anal sex with appellant on four different occasions, twice at her mother's house and twice at appellant's girlfriend's house. The first time she had anal sex at appellant's girlfriend's house, it occurred on the living room sofa.

{¶ 13} Ava testified that her relationship with appellant ended in January 2022 after her biological father regained custody of her. At that time, Ava moved out of her mother's home and in with her father. Ava's father discouraged any contact between Ava and appellant. Also, around this time, appellant's car was repossessed and he was unable to drive to see Ava.

{¶ 14} Nearly a year-and-a-half later, on May 31, 2023, Ava disclosed her sexual relationship with appellant to Clermont County Sheriff's Detective Yvonne Sheppard. Detective Sheppard began an investigation into Ava's allegations and referred Ava to the Mayerson Center for Safe and Healthy Children for a forensic interview.

{¶ 15} As part of her investigation, Detective Sheppard obtained consent from

Ava's father to search and conduct a forensic download of Ava's cell phone. The cell phone was the same cell phone Ava had used to communicate with appellant from August 2021 through January 2022. The forensic download showed that during the relevant time period, appellant and Ava exchanged more than 12,000 text messages and made a combined 114 phone calls to one another. Although some of those phone calls lasted only seconds or minutes long, there were multiple calls lasting over an hour .

{¶ 16} The text messages that appellant and Ava exchanged were admitted into evidence. None of the text messages were sexually explicit in nature. However, the text messages demonstrated the close relationship the two shared. Appellant and Ava often texted one another that they missed each other. Appellant told Ava that he would "always make time for [her] no matter what," that she "matter[s]," and that she was "BEAUtiful" and "gorgeous." Appellant joked about "stealing" Ava away to spend time with her and indicated that his girlfriend and girlfriend's daughter were jealous of all the time he was spending with her. Finally, the text messages included references to gifts appellant bought for Ava, including jewelry and other Amazon purchases, and references to a male classmate needing to "keep his distance" from Ava. At one point, on September 23, 2021, appellant texted Ava about needing to go to his storage unit.

{¶ 17} In addition to the text messages and phone call logs extracted from Ava's cellphone, the forensic download also revealed multiple photographs of appellant on Ava's cellphone. The photos were taken between October 2021 and December 2021. In one of the photos, appellant had the stuffed animal he bought her draped over his face. In another photo, appellant appeared to take a photograph of himself making half of a heart with his fingers.

{¶ 18} Appellant's cellphone was collected by the police as part of their investigation. However, appellant was using a different cellphone than the one that he

had used to communicate with Ava during the majority of their relationship. Appellant's old cellphone had been reset to its factory settings. Appellant had gotten a new cellphone in January 2022. Therefore, only appellant's text from January 2022 and later were recoverable by law enforcement. However, the forensic download of appellant's new cellphone revealed 36 photographs of Ava. The photographs included photographs of Ava at appellant's girlfriend's home, photographs of Ava with appellant's girlfriend's daughter, photographs of Ava with other friends her age, a photograph of Ava sleeping, photographs of Ava's eyes, and a photograph of appellant and Ava starring into each other's eyes while lying in bed together at Ava's mother's home. Also recovered from appellant's phone was the photograph of appellant with the stuffed animal he bought for Ava draped over his face.

{¶ 19} As part of the investigation into appellant, Detective Sheppard confirmed that appellant rented a storage unit in Batavia Township. From the operator of the storage unit, the detective obtained a copy of the rental agreement signed by appellant, which included a photocopy of his driver's license, and a log of the dates and times appellant's storage unit was accessed. Detective Sheppard explained that individuals who used the storage units were provided with unique, personalized codes that had to be used to access the units. Appellant's code had been used around 7:00 p.m. on September 24, 2021, which the detective noted was around the same time frame that he had texted Ava about needing to access the storage unit.

{¶ 20} Appellant's girlfriend, his girlfriend's daughter, and "Alyx," a friend of the girlfriend's daughter, all testified at trial. Appellant's girlfriend testified that she noticed a change in her relationship with appellant beginning in July 2021, around the time of Ava's 14th birthday. Appellant began to regularly spend time with Ava, often picking Ava up and bringing her back to the girlfriend's home so that Ava could spend the night. Though Ava

was friendly with Phallon, the girlfriend's daughter, she noticed that appellant spent a substantial amount of time with Ava, often talking to her on the phone and even cuddling with Ava. Appellant's girlfriend observed Ava lay her head on appellant's lap and, in October 2021, she saw appellant rubbing his hand down Ava's leg. Appellant claimed Ava had something sticky on her leg, but the girlfriend did not observe anything sticky. Appellant's relationship with Ava eventually caused the girlfriend to end her relationship with appellant.

{¶ 21} Alyx testified that she was a friend of Phallon's and that she grew close to appellant after appellant and Ava's relationship ended. Appellant told Alyx the intimate details of his relationship with Ava, informing Alyx that Ava performed fellatio on him in the kitchen of appellant's girlfriend's home. He also told Alyx about a time when Ava's mother caught him and Ava having vaginal intercourse in Ava's bedroom. Alyx testified appellant was depressed, angry, and sad that his relationship with Ava had ended.

{¶ 22} The final witness to testify on behalf of the State was the social worker from the Mayerson Clinic who conducted a forensic interview of Ava on June 2, 2023. The social worker testified that during the interview, Ava disclosed that she had engaged in sexual activity with appellant. Through the use of anatomical diagrams, Ava disclosed incidents of digital penetration to her vagina, penile-vaginal intercourse, penile-anal intercourse, fellatio, and cunnilingus. A video of Ava's forensic interview was admitted into evidence.

{¶ 23} Following the State's presentation of its case-in-chief, appellant moved for acquittal on all 40 charges of unlawful sexual conduct with a minor. The trial court granted appellant's motion on 23 counts, acquitting appellant on counts 10 through 12, 14 through 16, 18 through 20, 22 through 32, and 34 through 36. However, the court found sufficient evidence had been presented by the State on the remaining 17 counts—that is counts 1

through 9, 13, 17, 21, 33, and 37 through 40.

{¶ 24} Appellant rested his defense without calling any witnesses. Following closing arguments, the 17 remaining charges were presented to the jury for deliberations. The jury ultimately found appellant guilty of 15 counts of unlawful sexual conduct with a minor and not guilty on two counts (counts 39 and 40).

{¶ 25} On March 6, 2025, appellant was classified as a tier II sex offender and sentenced to four years in prison on each count, with the sentences on counts 5, 6, 7, 8, 9, and 38 running consecutively to one another. The remaining prison terms on counts 1, 2, 3, 4, 13, 17, 21, 33, and 37 were to be served concurrently with each other and concurrently with counts 5, 6, 7, 8, 9 and 38, for an aggregate prison term of 24 years. Appellant's 24-year sentence was ordered to be served consecutively to a prison term previously imposed in Clermont County Common Pleas Case No. 2022 CR 927.

{¶ 26} Appellant timely appealed his conviction and sentence, raising four assignments of error. For ease of discussion, we will address appellant's assignments of error out of order.

## II. ANALYSIS

### A. Motions for Mistrial

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE TRIAL COURT ERRED BY NOT GRANTING THE DEFENSE MOTION FOR A MISTRIAL.

{¶ 29} In his second assignment of error, appellant argues the trial court erred in denying his requests for a mistrial after two of the State's witnesses testified that appellant took nude photos and a video of Ava. Appellant maintains the jury unfairly used information about the photos and video to convict him.

{¶ 30} Appellant initially moved for a mistrial on the second day of trial, in the midst

of Ava's testimony. On direct examination, the State elicited testimony from Ava that appellant took photographs of her where she "had nothing on" and that he later deleted the photographs. Defense counsel objected to this testimony on the grounds that it was irrelevant and prejudicial as appellant had not been charged with "any sort of child pornography or taking photographs of her naked." The trial court ultimately sustained the objection, contending that the testimony was "about uncharged crimes" and "the prejudicial effect outweigh[ed] – substantially outweigh[ed] the probative value." The trial court provided a curative instruction to the jury, advising them to disregard the answers given by Ava to the last few questions as "[t]hey're not to be used in any form or fashion in your determinations in this case." Thereafter, the State continued its direct examination of Ava. Defense counsel then began its cross-examination. Shortly after cross-examination of Ava began, the court took a brief recess. Prior to cross-examination resuming, defense counsel moved for a mistrial, referencing the "highly prejudicial" testimony from Ava about the photographs. Defense counsel acknowledged that the trial court had provided a curative instruction to the jury but claimed that because the jury had already heard the testimony and "you can[not] unring that bell," a mistrial was appropriate. The trial court denied defense counsel's motion and the trial resumed.

{¶ 31} Defense counsel moved for a mistrial a second time following the completion of Alyx's testimony. When Alyx was testifying, the State asked her to "[p]lease tell the jury the details that [appellant] told you about [Ava and appellant's] intimate relationship." Alyx responded, "That he had taken a video —" Alyx's statement was promptly interrupted by the prosecutor, who stated, "Okay. We're not going to talk about that. Sorry. What did he tell you about what they physically did to each other?" There was no further mention of any video or photographs during Alyx's testimony and at no point did defense counsel object to Alyx's testimony. Nonetheless, at the conclusion of Alyx's

testimony, which coincided with the end of the second day of trial, defense counsel renewed his motion for a mistrial. The following conversation occurred:

> [Defense Counsel]: I would just once again renew the motion [for mistrial] just because the last witness, when she was testifying, I know there was no malicious intent, but she did say something about taking a video. The State promptly stopped her. But once again, that was put out there for the jury to hear and . . . I think the assumptions can be drawn from the answer that was given and the immediate command to stop talking about that. So once again, I would renew my motion for mistrial.
>
> THE COURT: I didn't hear an objection after it did take place. So I didn't know what the trial strategy was on your end. I was more than happy to give a curative instruction if that's what you wish, and I still can, starting tomorrow, if that's what you wish. Let me know tomorrow morning if you wish for a curative instruction as it relates to that statement. Again, sometimes attorneys do and sometimes they don't. I don't pretend to know what it is that you would want.
>
> If you had made the objection then while the jury was still here, I'd be asking you the same question. So –
>
> [Defense Counsel]: I just think sometimes –
>
> THE COURT: I don't think it's going to rise to a mistrial at this point in time, but I'm more than happy to give a curative instruction if that's what you wish.
>
> [Defense Counsel]: I think the reason for not objecting and the reason I probably would not ask for any further instructions on it is I believe that it just draws more attention to it so –
>
> THE COURT:  I understand.
>
> [Defense Counsel]:  -- I just would prefer to leave it be, but I would make a motion because the jury's now heard that answer, and it's hard to unhear that.

The trial court ultimately denied the renewed motion for a mistrial.

{¶ 32} "A mistrial should not be ordered merely because of some error or irregularity at trial." *State v. Pichardo-Reyes*, 2017-Ohio-8534, ¶ 45 (12th Dist.), citing *State v. Partin*, 2013-Ohio-2858 (12th Dist.). Rather, "mistrials need be declared only

- 10 -

when the ends of justice so require and a fair trial is no longer possible." *State v. Garner*, 1995-Ohio-168, ¶ 39. A trial court's decision to grant or deny a mistrial rests within the trial court's sound discretion, and the trial court's decision will not be reversed absent an abuse of discretion. *State v. Thornton*, 2009-Ohio-3685, ¶ 11 (12th Dist.); *Pichardo-Reyes* at ¶ 45. "An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable." *State v. Motz*, 2010-Ohio-2170, ¶ 12 (12th Dist.). A decision is "unreasonable" where there is no sound reasoning process to support it. *State v. Miller*, 2016-Ohio-7360, ¶ 7 (12th Dist.). "[A]n 'arbitrary' decision is one made 'without consideration of or regard for facts [or] circumstances.'" *State v. Beasley*, 2018-Ohio-16, ¶ 12, quoting *Black's Law Dictionary* (10th Ed. 2014). An unconscionable decision is one that "affronts the sense of justice, decency, or reasonableness." *State v. Wane*, 2020-Ohio-4874, ¶ 22 (12th Dist.).

{¶ 33} Having reviewed the record, we find that the trial court did not abuse its discretion in denying appellant's requests for a mistrial. As to appellant's initial request for a mistrial, the trial court had sustained defense counsel's objection to Ava's testimony that appellant took nude photos of her and the court provided a curative instruction to the jury, advising them not to consider such testimony "in any form or fashion in [their] determinations in this case." It is well settled that "[a] jury is presumed to follow the instructions, including curative instructions, given [to] it by a trial judge." *Garner* at ¶ 39. "[C]urative instructions . . . are presumed to be an effective way to remedy errors that occur during trial." *State v. King*, 2022-Ohio-3388, ¶ 32 (12th Dist.).

{¶ 34} As for the denial of the renewed motion for mistrial following Alyx's testimony, we also find that the trial court did not abuse its discretion in denying the motion. There, the State immediately interjected after Alyx stated appellant had told her "he had taken a video" to inform Alyx that they were not going to talk "about that." Alyx

- 11 -

had not described the video in any fashion and her limited statement about "a video" did not unfairly prejudice appellant or otherwise affect his right to a fair trial. Furthermore, defense counsel elected not to object to the testimony at the time it was offered by Alyx and further elected not to have a curative instruction provided to the jury when one was offered by the trial court. Any error with regard to the lack of an instruction was invited. *See State v. Williams*, 2024-Ohio-337, ¶ 58 (8th Dist.) (holding that where a defendant expressly refused the trial court's offer to provide a curative instruction, the defendant was later precluded from taking advantage of the error that he himself invited or induced).

{¶ 35} As there was no error or irregularity that was injected into the proceedings that adversely affected appellant's substantial rights or interfered with his right to a fair trial, we find the trial court did not err in denying appellant's requests for a mistrial. *Thornton*, 2009-Ohio-3685, at ¶ 11 (12th Dist.). Appellant's second assignment of error is overruled.

**B. Crim.R. 29 – Motion for Acquittal**

{¶ 36} Assignment of Error No. 3:

{¶ 37} THE COURT ERRED BY NOT GRANTING THE MOTION FOR A DISMISSAL PURSUANT TO RULE 29 ON THE 17 COUNTS WHICH WENT TO THE JURY FOR DECISION.

{¶ 38} In his third assignment of error, appellant argues the trial court erred when it denied his Crim.R. 29 motion for acquittal on the 17 counts that went to the jury. Appellant contends there was insufficient evidence of unlawful sexual conduct with a minor where Ava failed to provide sufficient details of each particular sex act.

{¶ 39} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or

offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Mota*, 2008-Ohio-4163, ¶ 5 (12th Dist.).

{¶ 40} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'In a sufficiency-of-the-evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines whether or not that testimony satisfies each element of the crime.'" *State v. Bowling*, 2025-Ohio-1693, ¶ 15 (12th Dist.), quoting *State v. Johnson*, 2007-Ohio-2385, ¶ 8 (10th Dist.).

{¶ 41} Appellant moved for acquittal on all 40 counts of unlawful sexual conduct with a minor. The trial court granted his motion on 23 counts, sending only 17 counts to the jury. Of those 17 counts, the jury convicted appellant of only 15 counts. We will therefore focus our discussion on those 15 counts for which he was convicted.

{¶ 42} Pursuant to former R.C. 2907.04(A), an offender is guilty of unlawful sexual conduct with a minor if the offender, "who is eighteen years of age or older . . . engage[s] in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of

age, or the offender is reckless in that regard."[2] Where the offender is ten or more years older than the other person, the offense is a felony of the third degree. R.C. 2907.04(B)(3).

{¶ 43} "Sexual conduct" includes "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body . . . into the vaginal or anal opening of another." R.C. 2907.01(A). "Penetration, however slight, is sufficient to complete vaginal or anal intercourse." *Id.*

{¶ 44} Having reviewed the record in the present case, we find that the State presented sufficient evidence through Ava's testimony that, if believed, would convince a rational trier of fact that appellant was guilty of each of the 15 counts of unlawful sexual conduct with a minor for which he was convicted. As this court has previously recognized, "'the testimony of the victim, if believed is sufficient to support a conviction, even without further corroboration.'" *State v. Hernandez*, 2011-Ohio-3765, ¶ 40 (12th Dist.), quoting *State v. Dunn*, 2005-Ohio-1270, ¶ 11 (9th Dist.). Contrary to appellant's assertions, Ava's testimony about each sexual offense was detailed enough to establish the essential elements of all 15 counts of unlawful sexual conduct with a minor for which he was convicted.

### 1. *Counts 1 through 4*

{¶ 45} Counts 1 through 4 involved the first time appellant and Ava engaged in sexual conduct at her mother's house in Cincinnati. At trial, the prosecutor referred to these offenses as a "4-pack," consisting of vaginal intercourse (count 1), cunnilingus (count 2), fellatio (count 3), and digital penetration of the vagina (count 4). Ava testified that the first time she and appellant engaged in sexual activity, it occurred shortly after

---

2 Effective August 9, 2024, R.C. 2907.04(A) was modified by the legislature to remove the phrase "not the spouse of the offender." *See* 2023 H.B. No. 161.

her 14th birthday at her mother's house while she and appellant were lying in bed together. Appellant had been holding Ava and kissing her. He then moved his hand down her pants, under her clothes, where he digitally penetrated her vagina with his fingers. Appellant then had vaginal intercourse with her, placing his penis inside her vagina. Appellant and Ava performed oral sex on one another, with Ava performing fellatio and appellant performing cunnilingus.

{¶ 46} As a close friend of Ava's family, appellant knew Ava's age or was reckless in that regard. Not only had he been involved in her life since she was around five years old, but appellant knew Ava was around the same age as Phallon, his girlfriend's daughter. Text message records demonstrated appellant sent Ava multiple "Happy Birthday" messages on the day of her 14th birthday, which fell in July 2021. At the time the sexual conduct between appellant and Ava began, appellant was 43 years old.

{¶ 47} Viewing Ava's testimony in a light most favorable to the prosecution, we find that the jury, as rational triers of fact, could have found the essential elements of counts 1 through 4 proven beyond a reasonable doubt.

*2. Counts 5 through 8*

{¶ 48} Counts 5 through 8 involved the first time appellant and Ava engaged in sexual conduct at appellant's girlfriend's home in Batavia. The prosecutor again referred to these four offenses as a "4-pack," consisting of vaginal intercourse (count 5), cunnilingus (count 6), fellatio (count 7), and digital penetration of the vagina (count 8). At trial, Ava testified that the first time she and appellant had sex at appellant's girlfriend's home, it occurred on the living room sofa, while appellant's girlfriend was at work. Ava testified that appellant put his fingers inside her vagina, performed cunnilingus on her, she performed fellatio on appellant, and the two engaged in vaginal intercourse. Ava's testimony was sufficient to establish the essential elements of each count of unlawful

sexual conduct with a minor as set forth in counts 5 through 8.

### 3. *Count 9*

{¶ 49} With respect to count 9, Ava testified that she and appellant had engaged in vaginal intercourse at appellant's rented storage unit in Batavia Township. Ava recalled that she and appellant had sex on a mattress kept in the storage unit and that appellant had worn a condom on that occasion. Entry logs obtained from the operator of the storage facility indicate appellant's unique entry code was used to access the storage unit on September 24, 2021, only a day after appellant had texted Ava about needing to go to his storage unit. Given the foregoing testimony and evidence, we find sufficient evidence was introduced by the State to establish unlawful sexual conduct with a minor by means of vaginal intercourse as set forth in count 9.

### 4. *Counts 13 and 17*

{¶ 50} Counts 13 and 17 related to sexual conduct that occurred at Ava's mother's home on two separate occasions. With respect to count 13, Ava testified that she had sex with appellant in her mother's home in September 2021, while appellant was living there. Ava remembered that she was on her period when the two engaged in vaginal intercourse, and she recalled seeing blood on the condom when she and appellant were finished.

{¶ 51} With respect to count 17, Ava recalled she and appellant were engaged in vaginal intercourse in her bedroom when her mother walked into the room. At the time, Ava had been on top of appellant in her bed. Appellant later described this incident to Alyx, admitting that Ava's mother caught him and Ava having sex in Ava's bedroom.

{¶ 52} We find that sufficient evidence was introduced by the State's witnesses to establish the essential elements of unlawful sexual conduct with a minor as set forth in counts 13 and 17.

### 5. *Counts 21 and 33*

{¶ 53} Counts 21 and 33 related to sexual conduct that occurred at Ava's mother's home on two separate occasions around the holidays. Count 21 related to an instance of vaginal intercourse that occurred around Christmas 2021. Ava testified she remembered feeling guilty for having sex with appellant because his girlfriend had given her a Christmas gift. Count 33 involved the last time she and appellant engaged in vaginal sex. Ava testified it occurred at her mother's home shortly after the New Year, around January 5, 2022. We find that Ava's testimony as to each of these events was sufficient to establish unlawful sexual conduct with a minor as set forth in counts 21 and 33.

### 6. *Counts 37 and 38*

{¶ 54} The final two counts of unlawful sexual conduct with a minor related to two instances of anal sex. Ava testified, with respect to count 37, that she and appellant had anal sex at her mother's home, and, with respect to count 38, the two had anal sex at appellant's girlfriend's home. Ava recalled that the first time she had anal sex with appellant at his girlfriend's home, the act had occurred on the living room sofa. Ava's testimony, as believed by the jury, was sufficient to support his conviction for unlawful sexual conduct with a minor as set forth in counts 37 and 38.

{¶ 55} Though Ava's testimony was not as detailed as appellant may have preferred, her trial testimony was nonetheless sufficient to satisfy the essential elements of the 15 counts of unlawful sexual conduct with a minor for which appellant was convicted. Ava's inability to recall certain details about the events that transpired over the course of five months, from August 1, 2021 through January 5, 2022, was an issue for the jury in accessing her credibility. However, in a sufficiency-of-the-evidence challenge, which is what appellant has raised in his third assignment of error, "an appellate court does not engage in a determination of witness credibility." *Bowling*, 2025-Ohio-1693, at ¶

15 (12th Dist.) Rather, we assume the State's witnesses testified truthfully and determine whether that testimony satisfies each element of the crime. *Id.* As discussed above, Ava's testimony satisfied each element of the crime of unlawful sexual conduct with a minor for the 15 counts for which appellant was ultimately convicted. We therefore conclude that the trial court did not err in denying appellant's motion for acquittal as to those counts and overrule his third assignment of error.

### C. Allied Offenses

{¶ 56} Assignment of Error No. 1:

{¶ 57} THE TRIAL COURT ERRED BY FAILING TO MERGE MULTIPLE COUNTS WHERE THE ACTS OCCURRED DURING THE SAME SEXUAL ENCOUNTER.

{¶ 58} In his first assignment of error, appellant argues the trial court committed plain error in failing to merge counts 1 through 4 together and failing to merge counts 5 through 8 together. Appellant maintains that "the imposition of multiple sentences for four sexual acts that happened at the same time with similar import and the same animus amounts to plain error."

{¶ 59} An appellate court typically reviews de novo whether two offenses are allied offenses of similar import. *State v. Williams*, 2012-Ohio-5699, ¶ 28; *State v. Clowers*, 2019-Ohio-4629, ¶ 32 (12th Dist.). However, appellant did not raise the issue of allied offenses at sentencing and did not object to the offenses in counts 1 through 4 and counts 5 through 8 not being merged. Where a defendant fails to raise the issue of allied offenses of similar import in the trial court, the accused "forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *State v. Rogers*, 2015-Ohio-2459, ¶ 3.

{¶ 60} Pursuant to R.C. 2941.25, Ohio's allied-offenses statute, the imposition of

multiple punishments for the same criminal conduct is prohibited. *State v. Seymore*, 2022-Ohio-2180, ¶ 13 (12th Dist.). In determining whether offenses are allied, courts are instructed to consider three separate factors—the conduct, the animus, and the import. *State v. Ruff*, 2015-Ohio-995, paragraph one of the syllabus. Offenses do not merge, and a defendant may be convicted and sentenced for multiple offenses if any of the following are true: (1) offenses are dissimilar in import or significance, (2) the conduct shows that the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id*. at ¶ 25. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id*. at paragraph two of the syllabus.

{¶ 61} The Supreme Court has recognized that different types of rape, such as vaginal intercourse, cunnilingus, and digital penetration, committed within the same sexual assault, "each constitutes a separate crime with a separate animus," and thus, "do not constitute allied offenses of similar import." *State v. Nicholas*, 66 Ohio St.3d 431, 435 (1993). "Different sexual acts are considered separate offenses." *State v. Stites*, 2020-Ohio-4281, ¶ 87 (1st Dist.). This principle has been extended beyond the crime of rape to other sexual offenses, including unlawful sexual conduct with a minor. *See, e.g., State v. Jones*, 2010-Ohio-2243, ¶ 16 (5th Dist.) (finding that the act of digital penetration and cunnilingus are distinct, separate acts permitting separate sentences to be imposed on each count of unlawful sexual conduct with a minor); *State v. Waters*, 2003-Ohio-4624 (5th Dist.) (finding that unlawful sexual conduct with a minor by vaginal intercourse and/or digital penetration and fellatio or cunnilingus were not allied offenses of similar import); *State v. Grant*, 2003-Ohio-7240, ¶ 59 (2d Dist.) ("Offenses involving distinct, different sexual activity each constitute a separate crime with a separate animus, and are not allied

offenses of similar import, even when they are committed in the course of the same encounter").

{¶ 62} The record before us demonstrates that appellant's sexual acts in counts 1 through 4 and in counts 5 through 8, respectively, were committed separately, notwithstanding the fact that they occurred close in time. With respect to the "4-pack" of offenses that occurred in counts 1 through 4, each of the sexual acts were distinct, involved different conduct, and were therefore separately committed. The act of digitally penetrating Ava's vagina (count 4) was separate and distinct conduct from the act of penile-vaginal intercourse (count 1), which was separate and distinct conduct from the act of cunnilingus (count 2) and the separate act of fellatio (count 3). The facts establish four separate crimes that do not constitute allied offenses of similar import. The trial court, therefore, did not commit plain error by not merging counts 1 through 4 for purposes of sentencing.

{¶ 63} The same is true as it relates to the "4-pack" of offenses involved in counts 5 through 8. The acts of digital penetration (count 8), sexual intercourse (count 5), cunnilingus (count 6), and fellatio (count 7) all constituted separate and distinct conduct. The trial court, therefore, did not commit plain error in imposing separate sentences on each conviction for unlawful sexual conduct with a minor. Appellant's arguments are without merit and his first assignment of error is overruled.

### D. Ineffective Assistance of Counsel

{¶ 64} Assignment of Error No. 4:

{¶ 65} [APPELLANT] WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL THAT MATERIALLY PREJUDICED HIM IN VIOLATION OF THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION AND ART. 1, SEC. 10 OF THE OHIO CONSTITUTION.

{¶ 66} In his final assignment of error, appellant argues he received ineffective

assistance of counsel because his trial counsel failed to request that counts 1 through 4 and counts 5 through 8, respectively, be merged as allied offenses of similar import. We disagree.

{¶ 67} "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 2020-Ohio-309, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), and *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Thus, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id.*, citing *Bradley* at paragraphs two and three of the syllabus. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Bradley* at 142, quoting *Strickland* at 694. The failure to satisfy either the deficiency prong or the prejudice prong of the test is fatal to a claim of ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

{¶ 68} As set forth above in our discussion of appellant's first assignment of error, appellant's convictions for unlawful sexual conduct in counts 1 through 4 and counts 5 through 8 were not allied offenses subject to merger as they involved separate, distinct sexual conduct and were committed separately. As a result, appellant cannot establish either the deficiency prong or the prejudice prong of his ineffective assistance of counsel claim. Any argument by counsel that the offenses were allied would have been futile, and, as this court has repeatedly held, "[t]rial counsel is not ineffective for failing to make a futile argument." *State v. Trafton*, 2023-Ohio-122, ¶ 29 (12th Dist.). Further, appellant cannot show any prejudice from trial counsel's decision not to argue the offenses were allied offenses as such an argument would not have resulted in a different outcome at

sentencing. *See, e.g., State v. Barron*, 2022-Ohio-102, ¶ 80 (12th Dist.). Appellant's fourth

assignment of error is, therefore, overruled.

### III. CONCLUSION

{¶ 69} Having found no merit to appellant's four assignments of error, we hereby

affirm his conviction and sentence.


BYRNE and SIEBERT, JJ., concur.


---
# J U D G M E N T   E N T R Y


The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.


/s/ Robert A. Hendrickson, Presiding Judge


/s/ Matthew R. Byrne, Judge


/s/ Melena S. Siebert, Judge